# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | | |
|---|---|---|
| KEITH N. CARTER,                 ) | | |
|     Plaintiff,             ) | | |
|                                  ) | | |
| v.                               ) | CAUSE NO.: 2:14-CV-416-PRC | |
|                                  ) | | |
| CAROLYN W. COLVIN, Acting        ) | | |
| Commissioner of Social Security, ) | | |
|     Defendant.             ) | | |

## OPINION AND ORDER

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Keith N. Carter on November 14, 2014, and Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], filed on March 30, 2015. The Commissioner filed a response on June 8, 2015, and Plaintiff filed a reply on June 19, 2015.

## BACKGROUND

Plaintiff first filed for supplemental security income on September 20, 2011. His claim was denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on April 12, 2013, and presided over by Administrative Law Judge (ALJ) William E. Sampson. Present at the hearing were Plaintiff, his attorney, Plaintiff's mother and father, and an impartial vocational expert.

The ALJ issued a written decision on August 15, 2013, concluding that Plaintiff was not disabled based on the following findings.

    1.    The claimant has not engaged in substantial gainful activity since September 20, 2011, the application date.

    2.    The claimant has the following severe impairments: diabetes mellitus, cervical spine degenerative disc disease, obesity, and schizoaffective disorder.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes or scaffolds and can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. He is capable of simple routine tasks and is limited to only occasional contact with supervisors, coworkers, or the general public.

5. The claimant has no past relevant work.

6. The claimant was born [in 1964] and was 46 years old, which is defined as a younger individual age 18-49, on the date the application was filed.

7. The claimant has at least a high school education and is able to communicate in English.

8. Transferability of job skills is not an issue because the claimant does not have past relevant work.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Social Security Act, since September 20, 2011, the date the application was filed.

(AR 14-23). Plaintiff then sought review before the Agency's Appeals Council, which denied his request on September 21, 2014, leaving the ALJ's decision as the final decision of the Commissioner. *See* 20 C.F.R. § 416.1481. On November 14, 2014, Plaintiff filed this civil action pursuant to 42 U.S.C. § 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. This Court thus has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 1383(c)(3).

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that he suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent him from doing his previous work, but considering his age, education, and work experience, it must also prevent him from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. § 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. § 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

# ANALYSIS

Plaintiff seeks reversal of the ALJ's decision and remand for an award of benefits or, alternatively, remand for further proceedings. In support of the requested relief, Plaintiff argues: (1) the ALJ gave improper weight to the medical opinions of Dr. Meyer and Dr. Brooks, (2) the ALJ erred in assessing Plaintiff's credibility, and (3) the ALJ's mental RFC assessment is not supported by substantial evidence.

**A. Weight to Medical Opinions**

Plaintiff argues that the ALJ assigned improper weight to the medical opinions of Dr. Meyer and Dr. Brooks. The ALJ gave little weight to Dr. Meyer's opinion and gave the greatest weight to Dr. Brooks' opinion as to the mental limitations in Plaintiff's RFC.

*1.     Dr. Meyer*

Dr. Meyer treated Plaintiff in 2012. In 2013, she completed a medical source statement in which she opined that Plaintiff was unable to meet competitive standards in almost every area of unskilled work and in every area of semiskilled and skilled work. Dr. Meyer also opined that Plaintiff would be absent from work more than four days per month.

Dr. Meyer is a treating psychiatrist, so the ALJ must give her opinion controlling weight if (1) the opinion is supported by "medically acceptable clinical and laboratory diagnostic techniques" and (2) it is "not inconsistent" with substantial evidence of record. *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). "An ALJ must offer 'good reasons' for discounting the opinion of a treating physician." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). If an ALJ determines that controlling weight is not appropriate, the ALJ must then decide what weight to assign to the opinion. 20 C.F.R. § 416.927(c).

7

The ALJ did not give controlling weight to Dr. Meyer's opinion because he found it to be "grossly inconsistent" with Plaintiff's treatment records. The ALJ did not find the opinion to be unsupported by proper diagnostic techniques. The ALJ cites to four facts in determining that the opinion in inconsistent: (1) Plaintiff's mental health records show him to be stable, (2) Plaintiff is able to do his activities of daily living independently, (3) Dr. Meyer gave Plaintiff a Global Assessment of Functioning (GAF) score of 60, and (4) Dr. Meyer's assessment was completed more than a year after the last documented treatment at the mental health center where Dr. Meyer works.

The ALJ's determination that Dr. Meyer's opinion is grossly inconsistent is flawed. First, the ALJ appears to have conflated the words "stable" and "cured." The two words are not interchangeable. Instead of meaning that symptoms have subsided, "stable" indicates that the condition is "[s]teady; not varying; resistant to change." *Stedman's Medical Dictionary* 1817 (28th ed. 2006); *see also Neher v. Colvin*, No. 14-C-5430, 2016 WL 278877, at *2 (N.D. Ill. Jan. 22, 2016) (noting a doctor's clarification that "stable," in regard to the plaintiff of that case, "means [the plaintiff] has not required hospitalization and has not deteriorated past baseline"); *Lakes v. Astrue*, No. 11-C-3592, 2013 WL 623022, at *12 (N.D. Ill. Feb. 19, 2013) (taking issue with the ALJ's assumption that stable means "no disabling impairments"). Plaintiff has a documented history of delusional symptoms. The stability of this condition is not inconsistent with Dr. Meyer's assessment of its effect on Plaintiff's ability to work.

The ALJ also considered Plaintiff's ability to independently perform activities of daily living to be inconsistent with Dr. Meyer's opinion. The ALJ stated that Plaintiff can perform a wide range of activities of daily living, including taking care of his personal hygiene, grocery shopping, doing house chores, socializing, and watching television. Though daily activities are proper to consider

8

when assigning weight if controlling weight is not given to a medical opinion or in assessing a claimant's credibility, *see* 20 C.F.R. §§ 416.927(c)(6), 416.929(c)(3), the proper metric here is whether the opinion is inconsistent. The Seventh Circuit Court of Appeals has noted that there are "critical differences between activities of daily living and activities in a full-time job," including " that a person has more flexibility in scheduling the former than the latter," and, in performing activities of daily living, a person "is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Plaintiff's ability to perform these daily activities is not inconsistent with Dr. Meyer's opinion.

Next, Plaintiff points to the ALJ's reliance on the GAF score of 60 that Dr. Meyer assigned to Plaintiff. The GAF scoring system was phased out in the American Psychiatric Association's 2013 release of the Diagnostic and Statistical Manual of Mental Disorders (DSM-5). Before its removal from the DSM, a GAF score of 51-60 represented moderate symptoms or moderate difficulty in psychological functioning. Despite its removal from DSM-5, the Social Security Administration still considers GAF scores to be opinion evidence. *See* Soc. Sec. Admin., Global Assessment of Functioning (GAF) Evidence in Disability Adjudication, AM-13066 (July 22, 2013) (hereinafter "AM-13066"). However, the Seventh Circuit Court of Appeals has recognized that a GAF score is "useful for planning treatment" but does not necessarily reflect a patient's functional level, *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010), and the Social Security Administration instructs that "[b]y itself, the GAF cannot be used to 'raise' or 'lower' someone's level of function," and "[a] GAF score is never dispositive of impairment severity," AM-13066. Consequently, a GAF score of 60 is not inconsistent with Dr. Meyer's opinion.

While the length of time of the treating relationship or the time elapsed between treatment and the opinion may be proper considerations if the opinion does not receive controlling weight, they are not appropriate reasons to support the ALJ's decision to not assign controlling weight. *See* 20 C.F.R. 416.927(c)(2) ("When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs [(c)(2)(i) through (c)(2)(vi)] of this section . . . ."). The ALJ did not provide good reasons for not giving Dr. Meyer's opinion controlling weight. The case must be remanded on this ground. If, on remand, the ALJ does not give controlling weight to Dr. Meyer's opinion, then the ALJ is to assign weight to the opinion in accordance with 20 C.F.R. § 416.927 and all other relevant regulations.

*2.     Dr. Brooks*

If Dr. Meyer's opinion is given controlling weight, then the ALJ need not explain the weight given to Dr. Brooks' opinion. 20 C.F.R. § 416.927(e)(2)(ii). However, if Dr. Meyer's opinion is not given controlling weight, then the ALJ must explain the weight given to Dr. Brooks' opinion. *Id.* In assigning weight to a medical opinion, the ALJ must consider the factors given in 20 C.F.R. § 416.927(c) (listing factors including the nature and length of the relationship, supportability, consistency, and specialization).

The ALJ found that Dr. Brooks' opinion regarding the mental limitations of Plaintiff's RFC is consistent with the record as a whole, and therefore deserving of "the greatest weight." (AR 21). However, the Court has concerns about the consistency of Dr. Brooks' opinion. *See* 20 C.F.R. 416.927(c)(2)(4).

Dr. Brooks notes that he finds "no consistent evidence or diagnosis of any affective disorder." (AR 607). The ALJ's acceptance of this opinion is in direct conflict with the ALJ's

10

conclusions that Plaintiff has a severe impairment of schizoaffective disorder, *see* (AR 14), and that "[Plaintiff's] treatment notes indicate that schizophrenia is his most significant impairment," (AR 18).

Dr. Brooks writes "[o]n some occasions [Plaintiff] is described as having hallucinations [and] delusions but the description is vague and at other times he is reported to be free of these symptoms such as page 14 of B1F." (A.R. 602-603). Though Dr. Brooks finds the ebb and flow of these symptoms troubling, the Seventh Circuit Court of Appeals has noted that "a person who suffers from a mental illness will have better days and worse days, so a snapshot of any single moment says little about her overall condition." *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011).

Dr. Brooks also makes inferences from Plaintiff's GAF scores to his functional abilities, which, as discussed above, is problematic. *See Denton*, 596 F.3d at 425.

Additionally, the ALJ mischaracterizes Dr. Brooks' opinion. The ALJ represents that "Dr. Brooks notes that there are examples of exaggerating and emphasizing his symptoms." (AR 21). However, Dr. Brooks actually wrote "Is this an example of a claimant who is exaggerating and emphasizing his symptoms?" (AR 605). Dr. Brooks does not resolve this question or conclusively state that Plaintiff exaggerates or emphasizes his symptoms.

Further, Dr. Brooks uses Plaintiff's statement that he cannot get a job due to his criminal background to find Plaintiff's condition less severe. (AR 602). However, Plaintiff's statement is evidence of Plaintiff's delusions, not of his actual ability to work. The unsuitability of using Plaintiff's delusional statements to discredit Plaintiff's claim of disability will be addressed more fully in the review of the ALJ's credibility determination below.

If, on remand, Dr. Meyer's opinion is not given controlling weight, and, therefore, the ALJ is required to explain the weight given to Dr. Brooks' opinion, a more careful examination of Dr. Brooks' opinion, especially in regard to its consistency with the record as a whole, is warranted.

## B. Credibility

In making a disability determination, the ALJ must consider a claimant's statements about his symptoms, such as pain, and how the symptoms affect his daily life and ability to work. *See* 20 C.F.R. § 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. § 416.929(c)(3). "Because the ALJ is 'in the best position to determine a witness's truthfulness and forthrightness . . . this court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and

to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff testified as to neck and back problems, a head injury, diabetes mellitus, and his attention span. Plaintiff also testified about making money through various means, including a book he had written, his anticipated future as the president of KFC Enterprises, a job he had held at Barnes and Noble, and his former vending outside of a hotel—at which Plaintiff testified he earned $13 per day.

The ALJ found Plaintiff to be "not entirely credible" regarding the intensity, persistence, and limiting effects of his symptoms. The ALJ found that Plaintiff's "belief that he could be successful at selling snacks and pop suggests that he believed that he was capable of working, which is inconsistent with a claim for disability." (AR 18).

On their face, Plaintiff's belief in his ability to work and his disability claim are inconsistent. However, the record contains substantial documentation of Plaintiff's delusional thinking regarding his ability to make money. Plaintiff's statements that indicate this belief in his money-making capabilities are evidence that he suffers from delusional thinking and support his claim for disability benefits. The practical result is that Plaintiff's belief is consistent with his disability claim.

It is error for the ALJ to use the delusions about making money, which are evidence of Plaintiff's mental impairment, to find Plaintiff not credible on matters not subject to his delusional thinking, such as his attention span.

The ALJ refers to Plaintiff's GAF scores in support of the credibility finding. As noted above, despite no longer being in the DSM, the Social Security Administration considers a GAF score to be a medical opinion. However a GAF score alone does not establish the severity of an

impairment. A GAF score is "useful for planning treatment" but does not necessarily reflect a patient's functional level. *Denton*, 596 F.3d at 425. On remand, the ALJ may use the GAF score in support of a credibility finding but must remain aware that it is not conclusive evidence of the severity of Plaintiff's impairments and speaks more to the issue of making treatment plans than to Plaintiff's level of functioning.

The ALJ must consider Plaintiff's daily activities in making the determination of Plaintiff's credibility. 20 C.F.R. § 416.929(c)(3). Though, as discussed above, the ALJ should bear in mind the differences between activities of daily living and the demands of full time work, it was not error to consider these activities in making the credibility determination.

### C. RFC

The RFC is a measure of what an individual can do despite the limitations imposed by his impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. § 416.945(a). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. § 416.927(d)(2); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3 (July 2, 1996); *Clifford*, 227 F.3d at 870.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p, at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental

14

limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*. In addition, he "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe'" because they "may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." *Id*.

Plaintiff alleges errors in the ALJ's determination of Plaintiff's mental RFC. Because this case is being remanded for new assessment of medical opinions and of Plaintiff's credibility, the ALJ's RFC finding may change significantly when revisited. Further, a couple of Plaintiff's arguments for reversal of the RFC finding are based on the same arguments already advanced by Plaintiff and addressed by the Court: more weight should have been given to Dr. Meyer's opinion and reliance on the GAF score is misplaced. Accordingly, an in-depth analysis of every argument Plaintiff makes for remand based on the mental RFC finding is not necessary.

The Court will provide additional guidance on a couple of matters. The ALJ has made two separate findings regarding Dr. Brooks' opinion. In the Step 2 analysis, the ALJ gives the opinion "considerable weight" but finds that Plaintiff has a more limited ability to maintain concentration, persistence, and pace than Dr. Brooks found. (AR 16). The ALJ found Plaintiff to have moderate limitation instead of Dr. Brooks' opinion of mild limitation. Later, in the RFC context and without referencing the earlier disagreement with Dr. Brooks' opinion, the ALJ assigned "the greatest weight" to Dr. Brooks' opinion and adopted the opinion's limitations as to Plaintiff's mental limitations in the RFC, including the restriction to work composed of simple, routine tasks. That is, the ALJ has adopted the RFC from an opinion which considers a mild limitation where the ALJ has

15

found that a moderate limitation exists. The ALJ did not explain why additional limitations in the RFC are not warranted as a result of the increased limitation.

In addition to this internal inconsistency, the RFC is also in conflict with case law. The Seventh Circuit Court of Appeals rejects the contention that restriction to simple, routine tasks is sufficient to account for moderate limitations in concentration, persistence, and pace. *Stewart v. Astrue*, 561 F.3d 679, 684-85 (7th Cir. 2009) (collecting cases).

Further, though Plaintiff sold soft drinks and snacks in a hotel parking lot during 2010 and 2011, "the claimant's earnings record does not support a finding that these earnings constitute substantial gainful activity." (AR 14). The ALJ should exercise caution in using Plaintiff's parking lot sales as evidence of Plaintiff's RFC, as the record suggests this was part-time work, and the RFC assessment pertains to the claimant's ability to work on a full-time basis.[1] *See* SSR 96-8p, at *2; *see also Elder v. Astrue*, 529 F.3d 408, 414 (7th Cir. 2008).

### D. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing *Briscoe*, 425 F.3d at 356). As is evident from the discussion above, remand, not an immediate award of benefits, is required here.

---

[1] There is an exception for part-time work that is substantial gainful activity, but that exception is not applicable to the facts of this case. *See* SSR 96-8p, at *2 n.2.

**CONCLUSION**

For these reasons, the Court **GRANTS** the relief sought in Plaintiff's Brief in Support of His Motion to Reverse the Decision of the Commissioner of Social Security [DE 15], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

SO ORDERED this 8th day of February, 2016.

                                          s/ Paul R. Cherry
                                          MAGISTRATE JUDGE PAUL R. CHERRY
                                          UNITED STATES DISTRICT COURT